# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| ANTON ARMSTRONG, | : | |
| Petitioner, | : | Case No. 3:08cv00254 |
| vs. | : | District Judge Timothy S. Black |
| | | Magistrate Judge Sharon L. Ovington |
| ROBIN KNAB, WARDEN, | : | |
| Chillicothe Correctional Institution, | : | |
| Respondent. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

### I. Introduction

Petitioner Anton Armstrong is an inmate in state custody at the Chillicothe Correctional Institution in Chillicothe, Ohio. He is serving a mandatory two-year sentence as a result of his no-contest plea and resulting conviction of one criminal offense – possession of crack cocaine in an amount greater than ten grams but less than twenty-five grams, a second degree felony described in Ohio Rev. Code §2925.11(A). (Doc. #5, Exhibits 6, 7).

Having unsuccessfully appealed his conviction in both the Ohio Court of Appeals and the Ohio Supreme Court, Armstrong, through counsel, brings the present case

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

seeking a writ of habeas corpus under 28 U.S.C. § 2254. He raises a single claim:

> A SEARCH AND SEIZURE THAT EXCLUSIVELY RELIES ON A PERSON'S RACE VIOLATES THE FOURTH AMENDMENT AND THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

(Doc. #1 at 12)[2] (capitalization in original). The case is now pending upon this claim raised in Armstrong's habeas petition. (Doc. #1). The case is likewise before the Court upon Respondent's Return of Writ (Doc. #5), Armstrong's Motion to Clarify (Doc. #6), and the record as a whole.

## II.     Additional Background

Prior to entering his no-contest plea in the Montgomery County, Ohio Court of Common Pleas, Armstrong filed and litigated a Motion to Suppress. (Doc. #5, Exh. 3). His Motion, filed by counsel, asserted that (1) police officers lacked reasonable suspicion to approach and detain him, (2) the information used by police officers was not corroborated by a reliable source before they encountered him, and (3) police officers lacked probable cause to arrest him. (Doc. #5, Exh. 3). The Motion also sought suppression of all physical evidence obtained by the arresting police officers as well as all statements he may have made after his "illegal detention." *Id*. at 34. The State of Ohio opposed Armstrong's Motion. (Doc. #5, Exh. 4).

---

[2] Citations to page numbers in documents of record refer to the page numbers assigned by the Court's case management electronic filing system.

On January 17, 2006, the Court of Common Pleas Judge G. Jack Davis held an evidentiary hearing on Armstrong's Motion to Suppress. Judge Davis held a second evidentiary hearing on April 11, 2006. (Doc. #5, Exh. 21). During the hearings, Judge Davis provided Armstrong's counsel with opportunities to cross-examine each of the three State's witnesses. Armstrong's counsel cross-examined each witness and re-crossed examined one witness. *Id*.

In a written decision issued on June 19, 2006, Judge Davis denied Armstrong's Motion to Suppress as meritless. (Doc. #5, Exh. 5). In doing so Judge Davis wrote, in part:

> "[O]n July 12, 2005, the Dayton Police Officers, along with Shawn Humphreys, an Officer with the Adult Parol Board went to ...[3] Wayne Avenue, Dayton, Ohio to investigate the alleged sale of narcotic by a parolee residing at the Wayne Avenue address. Sergeant Spiers, along with the Parole Officer, made contact with a white female identified as Marilyn at the Wayne Avenue address. Marilyn informed the officers that the parolee they were searching for occupied ... Wayne Avenue but he was not there at that time. She further informed the officers that the parolee was a drug addict and had placed an order for a delivery of drugs to the residence. The drugs were to be delivered by a black male approximately six feet tall who's name was Wayne driving a black truck. The officers decided to stay and approximately thirty to forty minutes later, the Defendant showed up driving a gray Mitsubishi automobile.
>
> Detectives Myers and Knight, who were stationed at the rear of the residence, observed the Defendant go up the steps to the back door of ... Wayne Avenue and have a conversation with Marilyn but they could not overhear the conversation. Upon alighting from the rear steps of the residence, the Defendant was approached by Detectives Myers and Knight. As the two detectives approached the Defendant, they identified themselves

---

[3] Each ellipsis in this quote replaces the same Wayne Avenue address number.

>as police officers and informed him that they wanted to talk to him.  The Defendant started backing away from the police officers and reaching in his right front pants pocket.  Detective Myers, believing that the Defendant may be reaching for a weapon, grabbed the Defendant's arm and a brief struggle ensued with the Defendant ending up on the ground.  The officers cuffed the Defendant for their safety and Detective Knight 'patted down' the Defendant for weapons.  Detective Knight testified that he felt what he recognized from his training and experience to be a baggy containing crack-cocaine.  He removed the baggy from the Defendant's pocket and placed him under arrest.  Later, a field test of the substance indicated a positive test for cocaine.  After the Defendant was placed under arrest, Detective Myers advised the Defendant of his [c]onstitutional rights from a card provided by the Montgomery County Prosecutor's office.  The officer recited the rights into the record which were the same rights set forth in *Miranda*.  Detective Knight overheard Myers advise the Defendant of his [c]onstitutional rights.  Both officers testified that the Defendant understood his rights and fully cooperated with the officers as to their field interview.
>
>   The Court finds that based upon the totality of the circumstances the Detectives had a reasonable and articulable suspicion to detain the Defendant.  Further, the actions of the Defendant justified the limited pat down search for weapons.  **Terry v. Ohio (1968), 392 U.S. 1; State v. Andrews (1991), 57 Ohio St.3d 86**...."

(Doc. #5 at 46-48) (bold in original)(footnoted added).

Shortly after Judge Davis denied the Motion to Suppress, Armstrong pled no contest to the possession charge.  This, as noted above, led to his single criminal conviction and to the two-year sentence he is now serving.

Armstrong's unsuccessful direct appeal soon followed.  In rejecting Armstrong's federal constitutional challenges to his detention and arrest, the Ohio Court of Appeals essentially reiterated the same facts Judge Davis described, with some additional details.  For example, the Ohio Court of Appeals recognized:

>"During their conversation with [Marilyn] M..., they [the officers]

4

> observed signs of drug activity and she admitted to being a drug user. She also told officers that she recently had ordered crack cocaine from a person named Wayne.... [Marilyn] also told the officers that she expected Wayne to deliver the drugs at any time. Spiers and Humphrey then asked [Marilyn] to call Wayne to verify that he was en route. [Marilyn] agreed. With the officers listening, she made a telephone call and asked for a 'forty hard,' which is the street name for a piece of crack cocaine. The dealer said he would arrive in about thirty minutes...."

(Doc. #5, Exh. 11 at 78); *State v. Armstrong*, 2007 WL 3071895 (Ohio App. 2nd 2007). After describing applicable constitutional law, and citing pertinent cases, such as *Terry v. Ohio*, 392 U.S. 1, 21 (1968), the Ohio Court of Appeals engaged in a detailed analysis of circumstances and actions taken by the police officers. The Ohio Court of Appeals also considered and rejected Armstrong's arguments, ultimately concluding that his initial detention, the pat down search, and his arrest did not violate Armstrong's federal constitutional rights. *Id*. at 80-83.

Armstrong's next state action ended when the Ohio Supreme Court rejected his Memorandum in Support of Jurisdiction and denied him leave to appeal. (Doc. #5, Exh. 17 at 136).

### III. Discussion

#### A. Armstrong's Fourth Amendment Search and Seizure Claim

Respondent asserts that because Armstrong's claim challenges evidence obtained during a search and seizure that he claims violated his Fourth Amendment rights, his claim is not cognizable in this federal habeas proceeding. This contention is well taken.

"[W]here the State has provided an opportunity for a full and fair litigation of a

5

Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494, 96 S. Ct. 3037 (1976).  A two-part inquiry resolves whether or not *Stone v. Powell* precludes federal habeas review of a Fourth Amendment search and seizure claim.  First, the "'court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a Fourth Amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.'"  *Machacek v. Hofbauer,* 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray,* 674 F.2d 522 (6th Cir. 1982)).

Ohio provides an adequate procedural mechanism for the litigation of Fourth Amendment claims in the form of a pretrial motion to suppress pursuant to Ohio R. Crim P. 12, and a direct appeal as of right from an order denying a motion to suppress pursuant to Ohio R. App. P. 3 and 5.  Therefore, under the first inquiry, Ohio's mechanism for the resolution of Fourth Amendment claims, in the abstract, presents the opportunity to raise such claims.  *See Riley*, 674 F.2d at 526; *see also Hillman v. Beightler*, 2010 WL 2232640 at *2 (N.D. Ohio 2010).

Armstrong utilized the adequate state mechanisms available in Ohio to raise his Fourth Amendment search and seizure claim and arguments.  *See* Doc. #5, Exhs. 3, 8, 9, 12.  Through counsel, Armstrong filed and litigated a Motion to Suppress in the Montgomery County, Ohio Court of Common Pleas.  (Doc. #5, Exhs. 3, 8).  Judge Davis

held two evidentiary hearings.  At each hearing Armstrong was represented by counsel who cross-examined each witness called by the prosecution.  (Doc. #5, Exh. 21).  Armstrong was also given the opportunity to present evidence but chose not to do so.  *Id*. at 74.  Judge Davis issued clear and cogent written opinion finding no merit in Armstrong's Motion to Suppress.  (Doc. #5, Exh. 5).

Armstrong then, through counsel, appealed Judge Davis' decision to the Ohio Court of Appeals, which carefully considered and rejected his Fourth Amendment claims and arguments.  (Doc. #5, Exhs. 8, 9).  The Supreme Court of Ohio later granted Armstrong leave to file a Memorandum in Support of Jurisdiction before eventually declining to accept jurisdiction over his case.  (Doc. #5, Exhs. 15-17).  In light of these full and fair proceedings in the Ohio courts, Armstrong has not shown any failure of Ohio's procedural mechanism or that such a failure prevented him from litigating his Fourth Amendment claims.  *See Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000)("Seymour does not, and cannot, claim that the State of Ohio did not provide her with a full and fair opportunity to litigate her Fourth Amendment claims; indeed, she did so in a suppression hearing before trial.").

Accordingly, Armstrong's Fourth Amendment claim and contentions are not cognizable in the present federal habeas corpus case.  *See Stone*, 428 U.S. at 494;  *see also Seymour*, 224 F3d. at 553; *Hillman*, 2010 WL 2232640 at *2, *11; *Quartman v. Timmerman-Cooper*, 2008 WL 2796572 at *6 (S.D. Ohio 2008).

### B. Armstrong's Fourteenth Amendment Claims

Armstrong contends that the police officers violated his rights under Fourth and Fourteenth Amendments – specifically, the Equal Protection and Due Process Clauses – by effecting their search and seizure based exclusively on his race. Armstrong, however, has waived these claim for purposes of federal habeas corpus review.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies..., thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)(internal citations and punctuation omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court..., alerting that court to the federal nature of the claim." *Reese*, 541 U.S. at 29 (citations omitted); *see Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004) ("'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'")(quoting *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999)).

If a federal habeas petitioner fails to fairly present federal claims to the state courts and if a state procedural rule bars the petitioner from obtaining a state court merits review of his federal claims, then the petitioner's procedural default may result in a waiver of the claims for purposes of federal habeas review. *See Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

Armstrong failed to fairly present the Ohio courts with his claim that the police

8

officers detained, arrested, or searched him solely because of his race in violation of the Due Process Clause or Equal Protection Clause. A careful review of the claims and contentions Armstrong asserted in the Ohio Court of Appeals shows that he focused solely on his Fourth Amendment search and seizure claim and arguments without mentioning the Due Process or Equal Protection Clauses and without asserting that the police officers acted exclusively because of his race. Armstrong, moreover, did not cite a case discussing police action that constituted a race-based violation of the Fourteenth Amendment; he instead cited to only Ohio state cases, and one Supreme Court case, concerning Fourth and Fourteenth Amendment search-and-seizure claims. *See* Doc. #5, Exh. 9 at 59-64. Similarly, a review of the Memorandum in Support of Jurisdiction Armstrong filed (through counsel) in the Ohio Supreme Court reveals the same focus on search-and-seizure claims without asserting a race-based violation of his rights under the Due Process or Equal Protection Clauses. *See* Doc. #5, Exh. 16, 121-27.

      No avenue of potential relief remains presently open to Armstrong in the Ohio courts because he could have raised his claims, but did not, on his direct appeal in both the Ohio Court of Appeals and the Ohio Supreme Court. "Ohio courts have set forth a default rule barring consideration of claims that should have been raised on direct appeal. Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal. [The Sixth Circuit Court of Appeals] has held that this rule is regularly and consistently applied by Ohio courts...." *Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001)(internal citations omitted). Armstrong thus

committed a procedural default by not fairly presenting on his direct appeal his claim that the police officers detained, arrested, or searched him solely because of his race in violation of the Due Process Clause or Equal Protection Clause. *See id.*; *see also Bonilla*, 370 F.3d at 497.

Two limited situations excuse a procedural default: (1) if the petitioner shows cause and prejudice or (2) if the petitioner shows a fundamental miscarriage of justice will result from the failure to consider the merits of the claims. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Monzo v. Edwards*, 281 F.3d 568, 575 (6th Cir. 2002). "In order to establish cause, a habeas corpus petitioner must show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting in part *Murray v. Carrier*, 477 U.S. 478, 494-95, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). Armstrong's Petition and supporting Memorandum and his Motion to Clarify do not indicate the existence of an objective external factor that prevented him from asserting his race-based Equal Protection and Due Process claims during his direct appeal in the Ohio courts. *See* Doc. #s 1, 6. In addition, Armstrong has not shown that a fundamental miscarriage of justice will occur if these claims are not reviewed in this case. *See id.*

Accordingly, Armstrong has waived for purposes of federal habeas review his race-based claims under the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment.

C.     **Certificate of Appealability**

Before Armstrong may appeal a denial of his habeas petition, he must first obtain a certificate of appealability. 28 U.S.C. §2253(c)(1)(A). To obtain a certificate of appealability when a habeas petition is denied on the merits, the petitioner must make a substantial showing of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This is accomplished by showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack*, 529 U.S. at 484 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)). If the District Court dismisses the petition on procedural grounds without reaching the merits of the constitutional claims, the petitioner must show that jurists of reason would find it debatable whether the District Court is correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The conclusions reached herein are not debatable by jurists of reason and do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue in this case.

**IT IS THEREFORE RECOMMENDED THAT:**

1.    Anton Armstrong's Petition for a Writ of Habeas Corpus (Doc. #1) be DENIED and DISMISSED;

2.    Armstrong's Motion to Clarify (Doc. #6) be DENIED as moot;

3. A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

4. The case be terminated on the docket of this Court.


September 10, 2010

                                                    s/Sharon L. Ovington
                                                    Sharon L. Ovington
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).